UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIMESH SHAH,<br><br>                        Plaintiff,<br><br>v.<br><br>COLLETTE S. PETERS, BOP Director, et al.,<br><br>                       Defendants. | Case No.: 3:23-cv-00801-RBM-JLB<br><br>**ORDER:**<br><br>**(1) DENYING § 2241 PETITION;** [Doc. 1]<br><br>**(2) DENYING PENDING MOTIONS AS MOOT [Docs. 9–11]**<br><br>[Docs. 9–11] |

      Petitioner Nimesh Shah ("Petitioner") filed a Petition for Writ of Habeas Corpus under § 2241 ("Petition"). (Doc. 1.) The Government filed a Response to the Petition, and Petitioner filed a response opposing the Government's Response. (Docs. 6–7.) Petitioner has also filed three motions that primarily focus on obtaining a ruling or hearing on the Petition. (Docs. 9 (requesting a hearing); Doc. 10 (requesting a judgment in his favor); Doc. 11 (requesting counsel to help obtain a ruling in his favor on the Petition).)

      For the reasons set forth the below, the § 2241 Petition is **DENIED** and the pending motions (Docs. 9–11) are **DENIED as moot**.

## I. BACKGROUND

Petitioner and the Government agree that Petitioner pled guilty to defrauding the United States Department of Veterans Affairs ("VA") out of almost $30 million and was sentenced to 45 months in custody with a three-year term of supervised release to follow. (Doc. 7 at 1; Doc. 6 at 1–2.) Petitioner was committed to the Bureau of Prisons' ("BOP") custody on March 25, 2021. (Doc 7 at 2; Doc. 6 at 2.) Seventeen months later, on August 8, 2022, Petitioner was transferred to a residential reentry center ("RRC") in San Diego. (Doc. 6 at 2; Doc. 6-1 [Ex. 2] (Termination Report showing Petitioner's arrival date at RRC).) Shortly thereafter, on December 6, 2022, Petitioner was released from the RRC placement and began his term of supervised release. (Doc. 1 at 2; Doc. 6 at 3; Doc. 7 at 2.)

Petitioner claims he accrued 300 days of First Step Act credits ("FSA credits")[1] but "has been provided [only] 180 days of FSA [c]redits." (Doc. 7 at 3.) More specifically, he requests the Court order his term of supervised release be reduced by 120 days[2] of FSA credits he believes he accrued from April 2, 2022 to December 6, 2022. (Doc. 1 at 4; Doc. 7 at 3, 9–10.)

## II. LEGAL STANDARDS

### A. Section 2241

A petition challenging "the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Hernandez v. Campbell*, 204 F.3d 861, 864–65 (9th Cir. 2000) (per curiam) (contrasting 28 U.S.C. § 2241 with a motion under 28 U.S.C. § 2255 that permits challenges to the legality of the sentence imposed).

---

[1] As explained further below, the First Step Act ("FSA") includes an incentive allowing eligible prisoners to earn time credits for participation in "evidence-based recidivism reduction programs and activities" *Sinek v. United States*, Case No. 23-cv-04352-VKD, 2024 WL 3873982, at *1 (N.D. Cal. Aug. 16, 2024) (citations omitted).

[2] In the § 2241 Petition, he asserts he has not received 122 days of FSA credits (Doc. 1 at 4); however, in his brief responding to the Government, he repeatedly asserts that he has not received 120 days of FSA credits (Doc. 7 at 3, 9–10). The Court need not resolve this discrepancy because it does not impact the Court's analysis.

As the Government acknowledges, under Ninth Circuit precedent, "an individual may still bring a habeas petition under section 2241 even after being released from custody if they are still on supervised release and there is a possibility that the individual could receive a reduction in his or her term of supervised release." (Doc. 6 at 4 (citing *Mujahid v. Daniels*, 413 F.3d 991, 994 (9th Cir. 2005)).) Because Petitioner is alleging that he has been denied FSA credits and is asking the Court to apply them to reduce his term of supervised release, his challenge is appropriately brought under § 2241.

      **B.**    **First Step Act**

"The [FSA] creates incentives for eligible prisoners in federal custody to participate in and complete evidence-based recidivism reduction programs and activities," including "[o]ne incentive [that] allows eligible prisoners to earn time credits … for participating in such programs and activities." *Sinek*, 2024 WL 3873982, at *1 (citations omitted); *see also Guerriero v. Miami RRM*, No. 24-10337, 2024 WL 2017730, at *1 (11th Cir. May 7, 2024) ("The FSA … mandates that the BOP offer incentives to prisoners who complete certain recidivism reduction programs and other productive activities while in custody.").

### III.    DISCUSSION

Petitioner requests the Court reduce his term of supervised release by the 120 days of FSA credits that he claims he earned but were not applied. (Doc. 1 at 4; Doc. 7 at 3, 9–10; *see also* Section I.) In Response, the Government argues that: (1) the BOP properly calculated and applied Petitioner's FSA credits (Doc. 6 at 6); (2) that Petitioner's attempt to reduce his supervised release term is barred by his plea agreement (*id.* at 8–9);[3] and (3)

---

[3] The Government argues that Petitioner is trying to circumvent his plea agreement, which prohibits him from seeking "to reduce or terminate early the term of supervised release until [he] has served at least 2/3 of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment." (Doc. 6 at 8 (quoting Ex. 1 at 23).) The Government explains that Petitioner has not fully paid the $29,350,999 restitution judgment (*id.*) and "incorrectly told BOP he had no restitution judgment outstanding." (Doc. 6 at 3 n.1.)

even if Petitioner earned FSA credits that were not applied, FSA credits cannot be applied to reduce a term of supervised release (*id.* at 4–6, 7–8). Because the Court finds FSA credits cannot be applied to reduce a term of supervised release, the Court need not address whether all of Petitioner's FSA credits have already been applied or if the relief Petitioner seeks in this § 2241 Petition is barred by Petitioner's plea agreement.

Almost every court to consider this issue has concluded that FSA credits cannot be applied to reduce a term of supervised release. *See United States v. Doost*, Case No. 22-cr-00466-JST-1, 2024 WL 2064062, at *5 (N.D. Cal. May 7, 2024) (agreeing "with the majority of district courts that have decided the issue" and "find[ing] no mechanism in the FSA" to reduce a supervised release term") (collecting cases); *Sinek*, 2024 WL 3873982, at *4 ("the Court concludes that [FSA credits] cannot be applied to reduce a term of supervised release"); *Guerriero*, 2024 WL 2017730, at *3 ("readily conclud[ing] that § 3632(d)(4)(C) means that FSA time credits are to be used to reduce incarceration time," not to be "applied to reduce [a] supervised release term"); *United States v. Calabrese*, Case No. 1:11-cr-00437, 2023 WL 1969753, at *3 (N.D. Ohio Feb. 13, 2023) ("this Court finds that FSA credits cannot be used to reduce a term of supervised release"); *Sila v. Warden*, Case No. EDCV 22-1632 RSWL (AS), 2023 WL 2504476, at *2 (C.D. Cal. Feb. 13, 2023) (finding FSA "does not provide for a reduction of supervised release terms") (collecting cases); *Jennings v. Thompson*, No. 2:21-cv-01666-TLN-JDP (HC), 2023 WL 3340451, at *1 (E.D. Cal. May 10, 2023) ("FSA credits cannot be applied toward a term of supervised release"); *Alvarez-Lion v. Birkholz*, No. 2:24-CV-01484-DOC-JC, 2024 WL 3468335, at *6 (C.D. Cal. July 5, 2024) ("The FSA … does not provide for a reduction of supervised release terms") (collecting cases).

Petitioner relies on one district court decision that found FSA credits should be applied to reduce a term of supervised release, *Dyer v. Fulgam*. (Doc. 1 at 4 (citing *Dyer v. Fulgam*, No. 1:21-cv-299-CLC-CHC, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022).) The *Dyer* decision finds "the relevant statutory provision provides that '[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism

reduction programs or productive activities shall be applied toward time in ... supervised release'" and concludes that "the unambiguous, mandatory language … provides that earned-time credits may be applied to a term of supervised release." *Dyer*, 2022 WL 1598249, at *3 (quoting 18 U.S.C. § 3632(d)(4)(C)).  Section 3632(d)(4)(C) states:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined by section 3624(g), into prerelease custody or supervised release.

As explained in more detail below, courts since *Dyer* that have thoroughly analyzed the language *Dyer* relies on along with the rest of this subsection and other provisions of the FSA have almost unanimously rejected *Dyer's* conclusion. In other words, *Dyer* "is an outlier that has been soundly rejected by an ever-growing number of courts since its issuance." *United States v. Burke*, Crim. File No. 16-00338(1) (MJD), 2024 WL 3509285, at *1 (D. Minn. July 23, 2024) (citations omitted); *Sinek*, 2024 WL 3873982 at *4 (*Dyer's* conclusion "has been rejected by nearly all of the courts that have considered whether time credits should be applied to reduce a term of supervised release.") (collecting cases); *United States v. Calhoun*, 3:08-CR-77-DPJ-LGI, 2023 WL 7930053, at *2 (S.D. Miss. Nov. 16, 2023) ("But *Dyer* has gained almost no traction and has been expressly rejected by nearly every court to consider it.") (collecting cases).[4]

///

///

---

[4] Only one case followed *Dyer*, *United States v. Mincey*. Case No. 1:18-cr-194, 2022 U.S. Dist. LEXIS 181765, at *5–6 (D. N.D. Oct. 4, 2022). The decision notes the Government did not address the merits of the defendant's pro se motion (*id.* at 1–2), construes the motion as a § 2241 petition (*id.* at 4–5), notes that "[t]he only case on point interpreting or applying 18 U.S.C. § 3632(d)(4)(C)" was *Dyer*, and then applies the unused FSA credits to the defendant's term of supervised release (*id.* at 5–6). The case does not consider any other language in § 3632(d)(4)(C) or 18 U.S.C. § 3632(g).

Numerous courts have acknowledged that, in isolation, the meaning of "toward" in § 3632(d)(4)(C) is ambiguous. *See Doost*, 2024 WL 2064062, at *4; *Guerriero*, 2024 WL 2017730, at *2. As the Eleventh Circuit explained, "[i]t's not clear from that sentence, read in isolation, whether time credits are to be used to reduce incarceration time so as to accelerate the beginning of prerelease custody or supervised release, on the one hand, or on the other hand, are to be used to reduce the actual time imposed by the original sentence of supervised release." *Guerriero*, 2024 WL 2017730, at *2; *see also Sinek*, 2024 WL 3873982 at *3; (noting same two reasonable interpretations of this sentence); *Doost*, 2024 WL 2064062, at *4 (summarizing same two possible interpretations). However, when considered in context, these same courts and others go on to find "toward" in § 3632(d)(4)(C) means the FSA credits bring the time supervised release starts "closer to occurring because credits applied 'toward' something generally means to bring that something closer to happening." *Burke*, 2024 WL 3509285, at *2 (quoting *Davis v. Rardin*, Case No. 22-cv-2854 (JRT/DLM), 2024 WL 209172, at *6 (D. Minn. Jan. 19, 2024) and citing Black's Law Dictionary); *Guerriero*, 2024 WL 2017730, at *3 ("FSA time credits are to be used to reduce *incarceration* time so as to accelerate the beginning of the supervised release time … imposed at sentencing," not to "have excess time credits applied to reduce [a petitioner's] supervised release term.") (collecting cases) (emphasis added). *Gelagotis v. Boncher*, No. 22-cv-11697-DLC, 2023 WL 6377874, at *4 (D. Mass. Sept. 29, 2023) ("Use of the word toward 'generally means to bring that something,' i.e., supervised release, 'closer to happening.'") (quoting *Gonzalez v. Pierre-Mike*, Civil Action No. 1:23-cv-11665-IT, 2023 WL 5984522, at *4 (D. Mass. Sept. 14, 2023)).

This is clear from the next sentence of § 3632(d)(4)(C) which directs the BOP to "transfer eligible prisoners, as defined under [§] 3624(g), into prerelease custody or supervised release." Section 3624(g) "in turn, defines an 'eligible prisoner' as one who 'has earned time credits under the [FSA] in an amount that is *equal to the remainder of the prisoner's imposed term of imprisonment*.'" *Doost*, 2024 WL 2064062, at *4 (quoting § 3624(g)(1)(A)) (emphasis added). This "clause … suggests that the time credits can only

be used to reduce a prisoner's term of incarceration and not the term of supervised release." *Doost*, 2024 WL 2064062, at *4 (citing *Calabrese*, 2023 WL 1969753, at *3). When eligibility or qualification for transfer from imprisonment to supervised release is defined by completion of enough FSA credits to cover the remainder of imprisonment, it is clear that the FSA credits are to be applied to the incarceration term, not the supervised release term.

Additionally, the supervised release section of § 3624(g) states that "if the sentencing court included … a term of supervised release after imprisonment the Director of the [BOP] may *transfer* the prisoner to begin any such term of supervised release *at an earlier date*, not to exceed 12 months, *based on the application of time credits under section 3632*." *Doost*, 2024 WL 2064062, at *4 (quoting § 3624(g)(3))(emphasis added). This section also suggests that FSA credits are only applied to reduce incarceration and "transfer" of the defendant to supervised release sooner, not to reduce the term of supervised release. *Guerriero*, 2024 WL 2017730, at *2; *Doost*, 2024 WL 2064062, at *4; *Sinek*, 2024 WL 3873982, at *3; *Calabrese*, 2023 WL 1969753, at *3 (quoting same and finding "[t]his clearly provides that the time credits are to reduce the prisoner's prison term.") And, "[u]se of the words 'to begin' a supervised release term 'based on application' of FSA credits unambiguously means to apply the credits before the inmate starts to serve supervised release as opposed to thereafter during that term." *Gelagotis*, 2023 WL 6377874, at *4 (quoting § 3624(g)(3) and citing *Calabrese*, 2023 WL 1969753, at *3).

Courts finding FSA credits cannot be applied to reduce a term of supervised release also rely on the absence of language, in § 3632 or § 3624, "indicat[ing] that BOP has authority to reduce the term of supervised release" and the lack of any amendment in the FSA of 18 U.S.C. § 3583, "which governs a court's decision to modify a defendant's term of supervised release." *Sinek*, 2024 WL 3873982, at *3 (citing *Doost*, 2024 WL 2064062, at *5); *Doost*, 2024 WL 2064062, at *4–5.

Finally, and significantly, "reduc[ing] a term of supervised release" based on FSA credits "would contravene the purpose of supervised release, which 'serves rehabilitative

ends distinct from those served by incarceration.'" *Davis*, 2024 WL 209172, at *6 (quoting *Gonzalez*, 2023 WL 5984522, at *5 and citing *United States v. Johnson*, 529 U.S. 53, 59 (2000)); *see also Burke*, 2024 WL 3509285, at *2 (adopting reasoning in *Davis*, 2024 WL 209172, at *6, including as to the need for supervised release to assist "in the transition to community life."). As the Supreme Court explained in *United States v. Johnson*, "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release. 529 U.S. at 59. Here, even assuming Petitioner had excess unapplied FSA credits earned during his incarceration, like excess prison time served, absent authority directing otherwise, those credits cannot be applied to reduce his term of supervised release.

Based on the foregoing analysis, the Court agrees with the vast majority of courts that have concluded that unapplied FSA credits cannot be applied to reduce a term of supervised release. *Doost*, 2024 WL 2064062, at *5 (collecting cases); *Sinek*, 2024 WL 3873982, at *4; *Guerriero*, 2024 WL 2017730, at *3; *Calabrese*, 2023 WL 1969753, at *3; *Sila*, 2023 WL 2504476, at *2 (collecting cases); *Jennings*, 2023 WL 3340451, at *1; *Alvarez-Lion*, 2024 WL 3468335, at *6 (collecting cases). Even assuming Petitioner earned FSA credits that were not applied to advance his transfer to supervised release, his § 2241 Petition is **DENIED** because FSA credits cannot be applied to reduce his term of supervised release.

## IV.   CONCLUSION

For the reasons set forth above, the § 2241 Petition is **DENIED**. Petitioner's pending motions (Docs. 9–11) are **DENIED** as moot. The Clerk shall enter judgment denying the § 2241 Petition.

**IT IS SO ORDERED.**

Dated: May 16, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE